## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **RACHEL BERGGREN,** On Behalf of Herself and All Others Similarly Situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**LIFE CARE CENTERS OF AMERICA, INC.**<br><br>and<br><br>**LONGMONT MEDICAL INVESTORS, LTD.**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.** |

---

## PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT
## AND JURY DEMAND ENDORSED HEREON

---

1.      This case challenges Defendants' long-standing policy of failing to properly compensate their non-exempt patient care workers for all hours that they work. Specifically, in violation of the Fair Labor Standards Act ("FLSA") and Colorado law, Defendants deducted meal breaks from the clocked hours of Plaintiff Rachel Berggren ("Plaintiff"), the putative Opt-Ins, and the proposed Class Members, even when Defendants knew, or should have known, that no meal breaks were taken.

2.      Plaintiff worked for Defendants in Colorado and brings her claims under the Colorado Wage Claim Act, *see* Colo. Rev. Stat. §§ 8-4-101, *et seq.* ("CWCA") and the Colorado Overtime and Minimum Pay Standards ("COMPS") Orders  #32, #36, and #37, 7 C.C.R. 1103-1

as a Rule 23 Class Action to remedy the illegal pay practice and policy of failing to pay Plaintiff

and the Class Members for all hours that they worked.

3.     Plaintiff also brings her claim under the FLSA as a collective action pursuant to 29

U.S.C. § 216(b) on behalf of herself and all non-exempt patient care staff at Defendants' Colorado

facilities.

## SUBJECT MATTER JURISDICTION AND VENUE

4.     This Court has original jurisdiction over Plaintiff's claims pursuant to the Class

Action Fairness Act found in 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of

interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are

in excess of 100 class members and some of the class members are citizens of a state different than

that of Defendant Life Care Centers of America, Inc.

5.     This Court also has original jurisdiction under the FLSA, 29 U.S.C. § 201, *et seq*.

6.     This Court also has supplemental jurisdiction over Plaintiff's asserted state law

claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the FLSA claims as to

form part of the same case or controversy.

7.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part

of the acts or omissions giving rise the claims in this Complaint took place in this district.

## PARTIES AND PERSONAL JURISDICTION

8.     Plaintiff Rachel Berggren is an individual residing in Longmont, Colorado.

Plaintiff's written consent to this action is attached hereto as Exhibit "A."  Plaintiff worked for

Defendant as a Certified Nursing Aide, and then as a Licensed Practical Nurse during the class

period at Defendant's Longmont, Colorado location in Boulder County.

9.      This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privileges of conducting activities in the state of Colorado and established minimum contacts sufficient to confer jurisdiction.  Defendants do business in Colorado through the ownership/operation of 29 nursing homes in this state, advertises in Colorado, employs workers in Colorado, and the violations of the law forming the basis of this lawsuit occurred in Colorado.  Therefore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.  Defendants also had and continue to have continuous and systematic contacts with the State of Colorado sufficient to establish general jurisdiction over them.

10.     The Class Members and putative Opt-Ins are all current and former non-exempt patient care providers, meaning nurses and aides, who worked in Colorado for Defendant during at least one week during the three-year period before the filing of this Complaint to the present.

11.     Defendant Life Care Centers of America, Inc. is a foreign corporation organized under the laws of Tennessee.  Defendant has its principal place of business at 3570 Keith St. NW, Cleveland, TN 37312. Life Care Centers of America, Inc. can be served with process by serving its registered agent Corporation Service Company at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

12.     Defendant Longmont Medical Investors, Ltd. is a Colorado limited liability company with its principal place of business at 2451 Pratt St., Longmont, CO 80501.

## COVERAGE

13.     At all material times, Defendants have been employers within the meaning of CO. REV. STAT. § 8-4-101(6) and the applicable COMPS Orders 32, 36, and 37.

3

14.     Specifically, Defendants are service companies within the meaning of the applicable Colorado Minimum Wage Order 32 because they are businesses or enterprises that generate 50 percent or more of their sales from services offered to the public – namely rehabilitation and long-term care services.

15.     Defendants are "employers" of Plaintiff, all putative Opt-Ins, and all Class Members pursuant to 29 U.S.C. § 203(d) in that they "act[ed] directly or indirectly in the interest of an employer in relation to…employee[s]."

16.     At all material times, Plaintiff, all putative Opt-Ins, and the Class Members were employees of Defendants with the meaning of CO. REV. STAT. § 8-104-101(5) and COMPS Orders 36 and 37, Rule 1.5.

## FACTS

### A. Defendants' nursing facilities are part of a single integrated enterprise.

17.     Defendant Life Care Centers of America, Inc. owns and operates nursing homes and rehabilitation facilities throughout the 27 states, including Colorado.[1]

18.     Defendants, individually and jointly, have an annual gross volume of sales made or business done of not less than $500,000.00.

---

[1] See http://lcca.com/locations/ (Last viewed 5/6/2025). Life Care Centers of America's Colorado locations include, but may not be limited to, The Bridge at Alamosa, Garden Plaza of Aurora, Life Care Center of Aurora, Garden Terrace Alzheimer's Center of Excellence at Aurora, Berkley Manor Care Center, Briarwood Health Care Center, Canon Lodge Care Center, Cherry Creek Retirement Village, Life Care Center of Colorado Springs, The Bridge at Colorado Springs, Columbine Manor Care Center, Life Care Center of Evergreen, Evergreen Nursing Home, Life Care Center of Greeley, The Bridge at Greeley, Hallmark Nursing Center, Heritage Park Care Center, The Inn at Garden Plaza, Life Care Center of Littleton, Life Care Center of Longmont, The Bridge at Longmont, Life Care Center of Pueblo, San Luis Care Center, Life Care Center of Stonegate, University Park Care Center, Valley View Villa, Villa Manor Care Center, Western Hills Health Care Center, and Life Care Center of Westminster.

19.    At all times relevant, Life Care Centers of America, Inc.'s nursing facilities were each nominally operated by separate business entities.

20.    For instance, as stated above in Paragraph 8, Plaintiff Rachel Berggren worked for Life Care Centers of America at its facility in Longmont, CO. That location is known as Life Care Center of Longmont,[2] and is owned/operated by Defendant Longmont Medical Investors, Ltd., the entity which served as Plaintiff's W-2 employer.

21.    All of the Life Care Centers of America facilities, including Life Care Center of Longmont, are subject to centralized control of labor relations, common management, and common ownership/financial control.

22.    By way of example, Life Care Center of Longmont self-reports to the federal Centers for Medicare and Medicaid Services ("CMS"), that is an "affiliated entity" within the "Life Care Centers of America" network[3]:

---

[2] https://lcca.com/locations/co/longmont/ (last viewed 5/6/25).
[3] https://www.medicare.gov/care-compare/details/nursing-home/065282?id=1949d9ec-6c63-41c5-9526-363a47364777&city=Longmont&state=CO&zipcode= (last viewed on 5/6/25)

**Life Care Center of Longmont**                                                     

# Ownership

---

**Legal business name**

Longmont Medical Investors, Ltd

**Ownership type**

For profit – Corporation

**Contact info**

2451 Pratt St
Longmont, CO 80501
(303) 776-5000


**Affiliated entity name**

LIFE CARE CENTERS OF AMERICA

Open affiliated entity performance information


**Affiliated entity ID**

311

23.     As an "affiliated entity," Longmont Medical Investors, Ltd. acknowledges in its
CMS filings that it is part of the Life Care Centers of America group of Medicare-certified nursing
homes linked together by common owners and operators – namely Life Care Affiliates II, and its
owner/CEO Forrest Preston.

24.     All of the facilities listed in footnote 1 likewise self-report to CMS that they are part of the same Life Care Centers of America network and, for each facility that reports to CMS as being part of the Life Care Centers of America network, the entity nominally owning and operating the facility (like Longmont Medical Investors, Ltd. for Life Care Center of Longmont) is owned and/or operated by one or more of the owners/operators of Life Care Centers – i.e., Life Care Affiliates II and Forrest Preston.

25.     Hence, Life Care Centers of America, Inc. has centralized control of labor relations, common management, and common ownership/financial control over the chain of nursing homes listed on its websites, and the entities operating those facilities thus constitute a single integrated enterprise.

**B.  Alternatively, Defendants are individual and joint employers of Plaintiff and those similarly situated.**

26.     During all relevant times, Defendants, individually and jointly, employed Plaintiff and other similarly situated employees.

27.     At all times relevant herein, Plaintiff and others similarly situated were "employees" of Defendants as defined in the FLSA and Colorado law.

28.     At all times relevant herein, Defendants, individually and jointly, were "employers" of Plaintiff and similarly situated employees within the meaning of the FLSA and Colorado law.

29.     As joint employers, Defendants are jointly and severally liable for the FLSA violations alleged herein.

30.     At relevant times, Defendants shared direct or indirect control and authority over matters governing the essential terms and conditions of employment for Plaintiff and similarly situated employees.

31.     At relevant times, Defendants shared direct or indirect control and authority over the working conditions of Plaintiff and similarly situated employees.

32.     At relevant times, Defendants jointly hired and fired employees, supervised and controlled the work schedules and conditions of employees, determined the rate and method of pay, and/or maintained employee records.

33.     Upon information and belief, Defendants apply or cause to be applied substantially uniform employment policies, practices, and procedures to all locations and employees, including those related to wage payment, overtime, timekeeping, and overtime practices, which form the basis of the violations alleged herein.

34.     The work performed by Plaintiff and similarly situated employees benefited all Defendants and directly or indirectly furthered their joint interests.

**C. Defendants failed to pay Plaintiff and those similarly situated for all time worked, resulting in unpaid overtime.**

35.     Defendants suffered or permitted Plaintiff and other similarly situated employees to work and thus employed them within the meaning of the FLSA and Colorado law.

36.     Plaintiff and other similarly situated employees frequently work forty (40) or more hours in a workweek.

37.     During her employment with Defendants, Plaintiff, like other similarly situated non-exempt patient care staff, was not fully and properly paid in accordance with the minimum requirements of the FLSA and Colorado law for all of her compensable hours worked due to Defendants' companywide policies and/or practices.

38.     At all relevant times, Defendants caused a 30-minute meal break to be deducted from Plaintiff's and other similarly situated employees' compensable hours worked, even when

8

Plaintiff and other similarly situated employees were unable to take a full, uninterrupted bona fide meal period.

39.    At all relevant times, Defendants' facilities were regularly understaffed and, as a result of the same, Plaintiff and other similarly situated employees were often unable to take a full, uninterrupted meal break.

40.    As a result of Defendants' companywide policy and/or practice of causing 30 minutes to be deducted from Plaintiff's and other similarly situated employees' compensable hours worked, Defendants knew or had reason to know that they were not compensating Plaintiff and other similarly situated employees for all hours worked.

41.    Defendants were fully aware of the understaffing and of the inability of Plaintiff and similarly situated employees to take uninterrupted meal breaks.

42.    For instance, Plaintiff was directed to clock out for meal breaks.  Her supervisors would monitor her clock punches and remind her to take breaks when they saw that none was taken:



43.     Despite this knowledge that Plaintiff had missed her meal breaks, Defendants did not pay Plaintiff for these missed meal break periods.

44.     Consequently, a meal break was deducted from Plaintiff's and other similarly situated employees' hours worked regardless of whether Plaintiff and other similarly situated employees actually received an uninterrupted bona fide meal break.

45.     Further, Defendants did not compensate Plaintiff and other similarly situated employees for short breaks of twenty (20) minutes or fewer in duration. As 29 C.F.R. §785.18 outlines, "rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry" and "must be counted as hours worked" and "may not be offset against other working time." 29 C.F.R. § 785.18.

46.     Defendants' failure to compensate Plaintiff and other similarly situated employees, as set forth herein, resulted in unpaid wages, including unpaid overtime.

47.     Defendants were fully aware of the fact that it was legally required to comply with the wage and hour laws of the FLSA and Colorado law.

48.     Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated employees as described herein.

### COUNT ONE:  FAILURE TO PAY OVERTIME (COLORADO)

49.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50.     At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the CWCA.  At all relevant times, Defendants have employed and continues to employ, "employees," including the Class Members, within the meaning the CWCA.

51.     As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under the CWCA and the Colorado Minimum Wage Act, *see* COLO. REV. STAT. § 8-4-101, *et seq.*, as implemented by the COMPS Orders, thereby violating, and continuing to violate, the CWCA.  These violations were committed knowingly, willfully and with reckless disregard of applicable law.

52.     As a result of the foregoing conduct, as alleged, Defendants have failed to pay overtime wages due under Colorado law.  Plaintiff and the Class Members were entitled to overtime wages at the rate of time and one half their regular rates of pay when they worked more than 12 hours in a day, more than 12 consecutive hours, or more than 40 hours in a week.

53.     Plaintiff, on behalf of herself and on behalf of the Colorado Class Members, hereby demands payment as contemplated by the CWCA in an amount sufficient to reimburse Plaintiffs

11

and the Class Members for all unpaid overtime wages, costs, expenses, attorney's fees, and interest.

## COUNT TWO: QUANTUM MERUIT

54.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

55.    Plaintiff asserts that she and each Class Member provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that Plaintiff and the Class Members expected to be compensated for their services furnished to Defendants.

56.    Each Class Member's W-2 employer accepted the benefits of those services without paying their employees, and passed the profits derived from that unjust enrichment onto Defendant Life Care Centers of America.

57.    The reasonable value of the services provided but not paid for by Defendants with respect to this Rule 23 claim is the difference between the number of hours said Class Members were paid in non-overtime weeks and the number of hours they actually worked, multiplied by each Class Member's then-applicable hourly rate as identified on their pay records. Alternatively, the reasonable value of the service provided but not paid for by Defendants is the average hourly rate for similar employees in Colorado. However, in no event is the reasonable value of the services provided but not paid for by Defendants less than the applicable minimum wage rate in Colorado for each hour worked.

## COUNT THREE: FAILURE TO PAY OVERTIME (FLSA)

58.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

59.     Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and the putative Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), which consist of the direct patient care staff working at Life Care Centers of America facilities in Colorado within the three years preceding the filing of this case.

60.     The FLSA requires employers, like Defendants, to pay non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

61.     Defendants failed to comply with the FLSA's overtime pay requirements as a result of the practices described in herein.

62.     In doing so, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

63.     As a result of Defendants' violations of the FLSA's overtime provisions, Plaintiff and the Opt-Ins were injured in that they did not receive compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to unpaid compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendants, and costs of the action."

## **RULE 23 CLASS ACTION ALLEGATIONS**

64.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

65.    Plaintiff brings her overtime and common law claims as a Rule 23 class action on behalf of the following class:

> All current and former non-exempt patient care staff who worked in Colorado at any Life Care Centers of America facility during at least one week during the three-year period before the filing of this Complaint to the present.

66.    Although Plaintiff does not know the precise number of members of the proposed class, Plaintiff believes there are more than 1,000 individuals that fit into the class.

67.    The members of the class are so numerous that their individual joinder is impractical.

68.    The identity of the members of the class is readily discernible from Defendants' records.

69.    Plaintiff and the proposed class on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.

70.    Common questions of law and fact exist to all members of the class. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

   a.    Whether Plaintiff and the Class Members performed compensable work without pay;

   b.    Whether Defendants knew or should have known about the work of Plaintiff and Class Members during uncompensated meal breaks;

      c.    Whether Plaintiff and the Class Members worked hours in excess of forty hours per work week; and

      d.    Whether Plaintiff and the Class Members were denied overtime pay at a rate not less than one and one-half times their regular rate under Colorado law.

71.    These and other common questions of law and fact, which are common to the members of the class, predominate over any individual questions affecting only individual members of the class.

72.    Plaintiff's claims are typical of the claims of the classes because Plaintiff was not paid wages in accordance with Colorado law just as it did with other Class Members.

73.    Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the classes that he seeks to represent. Plaintiff has retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and her counsel.

74.    The class action under Colorado state law is superior to other available means for the fair and efficient adjudication of the state law claims of Plaintiff and the Class Members. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the classes individually to redress effectively the wrongs done to them; even if the members of the class could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of

the case. By contrast, the class action presents far fewer logistical issues and provides the benefits

of a single adjudication, economy of scale and comprehensive supervision by a single court.

## **JURY DEMAND**

75.  Plaintiff and Class Members hereby demand trial by jury on all issues.

## **PRAYER**

76. For these reasons, Plaintiff prays for:

a.   An order certifying this case as a class action under Rule 23 for the Colorado law claims;

b.   An order certifying this case as a collective action under 29 U.S.C. § 216(b) for the FLSA claim and directing that notice be sent to potential opt-in plaintiffs;

c.   A judgment against Defendants, jointly and severally, awarding Plaintiff and the Class Members all their unpaid wages, overtime compensation, and liquidated damages;

d.   An order awarding attorneys' fees, costs, and expenses;

e.   Pre- and post-judgment interest at the highest applicable rates; and

f.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Hans A. Nilges*
Hans A. Nilges
Ohio Bar No. 076017
**NILGES DRAHER, LLC**
7034 Braucher St NW, Suite B
North Canton, OH 44720
Tel: (330) 470-4428
Fax: (330) 754-1430
Email: hans@ohlaborlaw.com

Robi J. Baishnab
Ohio Bar No. 0086195
**NILGES DRAHER, LLC**
1360 E. 9th St, Suite 808
Cleveland, OH 44114
Telephone: 216-230-2955
Facsimile: 330-754-1430
Email: rbaishnab@ohlaborlaw.com

Scott D. Perlmuter (admission pending)
Ohio Bar No. 0082856
**TITTLE & PERLMUTER**
4106 Bridge Ave.
Cleveland, OH 44113
Telephone: (216) 222-2222
Facsimile: (888) 604-9299
Email: scott@tittlelawfirm.com

*ATTORNEYS FOR PLAINTIFF AND*
*PUTATIVE CLASS/COLLECTIVE*
*MEMBERS*